# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**FLOYD FLUGENCE #401997**              **CASE NO.  6:19-CV-0839 SEC P**

**VERSUS**                              **JUDGE MICHAEL J. JUNEAU**

**DARRYL VANNOY**              **MAGISTRATE JUDGE WHITEHURST**


## REPORT AND RECOMMENDATION

Pro se petitioner Floyd Flugence, a prisoner in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus, pursuant to 28 U.S.C. §2254, on June 27, 2019.  Rec. Doc. 1.  Petitioner attacks his 1998 conviction for second degree murder and the life sentence imposed thereon by the Fifteenth Judicial District Court, Lafayette Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

## I.    FACTUAL BACKGROUND

The facts of this case, as laid out by the Third Circuit Court of Appeal, are as follows:

> On February 11, 1997, Defendant, an off-duty Carencro Reserve Police Officer, was watching the Mardi parades in Lafayette, Louisiana at Club Jamaica, where he was working as a security guard. A fight ensued. At which time Defendant and Brian Benoit, the victim, came out of the bar to stop the disturbance.

> During the struggle, Benoit ran into Defendant, who pushed him in return. Benoit then punched Defendant, knocking him to the ground. Defendant got up and charged Benoit only to be punched and knocked to the ground again. He then walked to his vehicle, got a handgun, returned to the scene, and shot Benoit in the chest killing him.

*State v. Flugence*, 98-1882 (La. App. 3 Cir. 6/2/1999); Rec. Doc. 11-3, pp. 44-53.

## II.    STATEMENT OF THE CASE

On May 21, 1997, Flugence was charged by Grand Jury Indictment with second degree murder, a violation of La. R.S. 14:30.1.  Doc. 1-2, p. 3.  Following a jury trial in the Fifteenth Judicial District Court, Lafayette Parish, petitioner was convicted August 28, 1998, of second-degree murder, and was later sentenced to a term of life imprisonment.  *Id*. at p. 4.

On January 5, 1999, Petitioner filed a direct appeal in the Third Circuit Court of Appeals, raising the following issues: (1) insufficient evidence to sustain a conviction for second degree murder; (2) trial court committed manifest error in denying the defense its constitutional right to present evidence and testimony in its defense; and (3) trial court committed manifest error in refusing to allow the jury, during its deliberations, and upon its request, to review the slow motion videotape of the incident giving rise to this matter.  Rec. Doc. 1-3, pp. 3-13.  The Third Circuit denied his appeal on June 2, 1999.  *State v. Flugence,* 98-1882 (La. App. 3 Cir. 6/2/99), 744 So.2d 235; *see also* Rec. Doc. 1-3, pp. 15-24.  On an unknown date, he

sought writs in the Louisiana Supreme Court, which denied same on April 27, 2001. *State ex rel. Flugence v. State*, 2000-KH-1574, (La. 04/27/01), 791 So. 2d 109.

An Application for Post-Conviction Relief was filed in the trial court on December 12, 2001, raising three issues: (1) petitioner's constitutional rights were violated when the Louisiana district court unconstitutionally selected the foreperson from the Grand Jury Venire before the remaining members of the Grand Jury were chosen; (2) petitioner's indictment failed to charge an offense where it omitted the elements of the crime; and (3) petitioner received ineffective assistance of counsel from trial counsel when he failed to file proper pre-trial motions to quash a defective indictment.   Rec. Doc. 1-3, pp. 48-73.   According to a timeline set forth in the Motion to Continue and Refix Hearing, filed by the State in the trial court in 2003, and attached as an exhibit to the instant petition, the trial court denied the application as untimely on December 18, 2001.  See Rec. Doc. 1-3, p. 76.  Petitioner sought writs in the Third Circuit Court of Appeal.  On February 22, 2002, the Third Circuit granted defendant's writ, finding that the trial court erred in denying the application as untimely, and ordered the trial court to consider and rule upon the merits of the claims contained in the application without undue delay.  *Id.*; *see also* Rec. Doc. 1-3, p. 126.  A hearing date was set by the trial court for August 5, 2002, at which time the defendant moved for a continuance and requested that an attorney be appointed to represent him.  The Court granted the continuance, ordered that an attorney be

appointed, and ordered that another motion for post-conviction relief be prepared after speaking with counsel.  Rec. Doc. 1-3, p. 76.

After a fifteen (15) year delay, during which time the petitioner filed numerous motions and complaints, the Third Circuit, on February 10, 2017, ordered that the trial court rule on petitioner's application by March 13, 2017.  Rec. Doc. 1-3, p. 127.  An evidentiary hearing was held before the Fifteenth Judicial District Court on petitioner's application for post-conviction relief on October 24, 2017, at which time the application was denied.  *See* Rec. Doc. 1-3, pp. 89-123.  On or about January 26, 2018, petitioner filed an application for writ of review in the Third Circuit Court of Appeal raising the claims brought in the original post-conviction as well as two new claims: (1) ineffective assistance of post-conviction trial counsel; and (2) due process violation relative to the 17-year delay on his post-conviction application (doc. 11-2, p. 23-39), which was denied on May 8, 2018, as deficient, as it failed to comply with La. Code of Crim. P. art. 912.1(C), Uniform Rules- Courts of Appeal, Rule 4-5, Third Circuit Internal Rule 16, and *City of Baton Rouge v. Plain*, 433 So.2d 710 (La.), *cert denied*, 464 U.S. 896 (1983).  Rec. Doc. 1-3, p. 125.  On June 11, 2018, petitioner sought writs in the Louisiana Supreme Court.  Rec. Doc. 1-3, pp. 29-46.  The Louisiana Supreme Court denied petitioner's application for supervisory and/or remedial writs on April 22, 2019.  *State ex rel. Flugence, v. State,* 791 So.2d 109 (La. 2001).

4

Petitioner filed the instant petition on June 27, 2019, raising the following claims: (1) insufficient evidence to convict; (2) trial court committed manifest error in denying defense its constitutional right to present evidence and testimony in its defense; (3) trial court committed manifest error insofar as it refused to allow the jury, during deliberations, and upon its request, to review slow motion videotape of the incident giving rise to the proceedings; (4) petitioner's constitutional rights were violated when the Louisiana district court unconstitutionally selected the foreperson from the Grand Jury venire before the remaining members of the grand jury were chosen by lot; (5) ineffective assistance of post-conviction counsel during his initial review; (6) due process violation relative to the 17-year delay on his post-conviction application; (7) indictment failed to charge an offense where it omitted the elements of the crime; and (8) ineffective assistance of trial counsel in failing to file proper pre-trial motions and quash defective indictment.   Rec. Doc. 1.

## III.    PROCEDURE

### A. Statute of Limitations

In 1996, as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Congress enacted 28 U.S.C. § 2244(d), which provides a one-year statute of limitations for filing applications for writs of habeas corpus by persons in custody pursuant to the judgment of a state court. This limitations period generally runs from "the date on which the judgment became final by the conclusion of direct

review or the expiration of the time for seeking such review. . . ." 28 U.S.C. § 2244(d)(1)(A). Federal courts may raise the one-year limitations period *sua sponte. See Kiser v. Johnson*, 163 F.3d 326 (5th Cir. 1999).

The statutory tolling provision of 28 U.S.C. § 2244(d)(2) provides that the time during which a properly filed application for post-conviction relief was pending in state court is not counted toward the limitations period.  See 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999); *Fields v. Johnson*, 159 F.3d 914, 916 (5th Cir. 1998). However, any lapse of time before the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period. *See Villegas v. Johnson*, 184 F.3d 467, 472 (5th Cir. 1999) (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998)).

Petitioner's conviction became final for AEDPA purposes on July 26, 2001, upon the expiration of the 90-day period for applying for certiorari with the United States Supreme Court.  Under 28 U.S.C. § 2244(d)(1) petitioner had one year, or until July 26, 2002, within which to file his federal habeas petition.

Petitioner's first application for post-conviction relief was filed on December 12, 2001, after 139 days accrued against §2244's one-year limit.  After moving through the Louisiana state courts, his writ application was finally denied by the Louisiana Supreme Court on April 22, 2019.  His petition was filed in this court on

June 27, 2019, after a total of 206 days had accrued against §2244's one-year limit. Thus, this matter is timely.

### B. Exhaustion and Technical Procedural Default

The States argues, and this Court agrees, that federal claims four, five, six, seven and eight are procedurally defaulted. "A fundamental prerequisite to federal habeas relief under Section 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 441 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F. 3d 384, 387 (5th Cir. 1998) (*citing Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F. 3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F. 3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20). Claim 4-8 were all brought before the Third Circuit Court of Appeal, which, in denying Petitioner's application for writs, held that the application failed to comply with Louisiana Code of Criminal Procedure 912.1(C), Uniform Rules- Courts of Appeal, Rule 4-5, Third Circuit Internal Rule 16, and *City of Baton Rouge v. Plain*, 433 So.2d 710 (La.), cert denied, 464 U.S. 896 (1983). Petitioner sought writs in the Louisiana Supreme Court, which denied Petitioner's application without comment.[1]

---

[1] This Court, in its Memorandum Order dated August 20, 2019, originally stated that claims five and six were raised for the first time in the Louisiana Supreme Court. Doc. 5. However, after having reviewed petitioner's application to the Third Circuit, which it did not have access to prior to the State filing its response on October 6, 2019, the Court notes that these claims were, in fact, raised in the Third Circuit, where they were denied on procedural grounds.

The Louisiana Supreme Court has supervisory jurisdiction over the courts of appeal. LSA Const. Art. 5, §5. In this instance, however, the intermediate appellate court never had an opportunity to review petitioner's claims 4-8 because they were never presented in a procedurally proper manner. Therefore, the merits of petitioner's claims were not properly before the Louisiana Supreme Court. Petitioner's claims therefore remain unexhausted. *See Thomas v. Cain*, 2007 U.S. Dist. LEXIS 75804, (W.D. La. Sept. 7, 2007) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Wilder v. Cockrell*, 274 F.3d 255 (5th Cir. 2001)).

A petitioner has "technically" exhausted his federal claims if he fails to properly and timely present them to the Louisiana courts and is thereafter time-barred from seeking relief in the Louisiana courts. *Magouirk v. Phillips*, 144 F.3d 348 (5th Cir.1998) *citing Coleman v. Thompson*, 501 U.S. 722 (1986) and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir.1995). In such a case, however, there is no difference between non-exhaustion and procedural default. *Magouirk*, 144 F.3d at 358. Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are "technically" procedurally defaulted. *Id*.

Since petitioner failed to properly present federal habeas claims 4-8 to the Louisiana Supreme Court, those claims remain unexhausted, and, for purposes of federal habeas corpus review, because petitioner cannot now meet the exhaustion

requirement, those claims are "technically" procedurally defaulted. *See Magouirk and Sones supra.* Indeed, under factually similar circumstances, this Court has found claims which were never properly presented to the Louisiana Third Circuit Court of Appeal were "technically" procedurally defaulted. *See Thomas v. Cain, supra.*

### C. Traditional Procedural Default

The Third Circuit did not rule on the merits of petitioner's post-conviction claims 4-8, because petitioner failed to comply with Louisiana Code Criminal Procedure article 912.1(C), Uniform Rules — Courts of Appeal, Rule 4-5. Accordingly, claims 4-8 are also traditionally procedurally defaulted. This is so because the last reasoned decision on these claims, that of the Louisiana Third Circuit Court of Appeal, clearly and expressly relied on state procedural rules as the basis for the court's Judgment. *See Harris and Sones, infra*.

The "traditional" procedural default doctrine applies to bar federal habeas corpus review when a state court declines to address a prisoner's federal claims because the prisoner failed to follow a state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Federal courts typically refuse to reach the merits of questions of federal law if the state courts have expressly relied on an "adequate and independent" state procedural ground in refusing to review the claim. "An 'adequate' rule is one that state courts strictly or regularly follow, and one that is applied

evenhandedly to the vast majority of similar claims." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997), *cert. denied*, 523 U.S. 1125 (1998), *citing Amos v. Scott*, 61 F .3d 333, 339 (5th Cir. 1995).   A state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief.  *Id., citing Lott v. Hargett,* 80 F.3d 161, 165 (5th Cir.1996).  A procedural rule is "independent" when the last state court rendering a judgment in the case "clearly and expressly" indicates that its judgment rests on the procedural ground. *Amos*, 61 F.3d at 338.

The procedural rules identified in this case satisfy both requirements. Petitioner makes no showing that Louisiana Code of Criminal Procedure article 912.1(C), Uniform Rules — Courts of Appeal, Rule 4-5 or Third Circuit Internal Rule 16 are not evenhandedly applied. Thus, these state court procedural rules are presumed "adequate." Moreover, while most appellate court decisions declining review of writ applications are unpublished, review of published Louisiana jurisprudence establishes that the Louisiana courts of appeal regularly invoke the requirements of Rule 4 and article 912.1 to bar review of non-conforming writ applications. *See Thomas*, *supra*.  For this reason, this Court has repeatedly found that Rule 4 of the Uniform Rules of the Courts of Appeal and article 912.1 is "adequate" for purposes of application of the "traditional" procedural default doctrine.  *Id*.

10

Moreover, the rules cited by the Third Circuit are "independent" because the last reasoned judgment on petitioner's claims four, seven and eight, that of the Third Circuit Court of Appeals, expressly relied solely on state procedural rules (Rule 4-5, article 912.1(C) and Internal Rule 16 when it declined review of the merits of petitioner's claims. The Louisiana Supreme Court did not specify reasons for its denial of review; it must therefore be presumed that the Supreme Court, like the Third Circuit, did not reach the merits of the claims. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

### i.    *Cause and Prejudice*

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claims will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486.

In this case, petitioner has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana Supreme Court.  He only argues that the Third Circuit erred in dismissing his petition and should have allowed him to cure the deficiencies.  Rec. Doc. 19, p. 2.   The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (*citing Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Petitioner's claims 4-8 are therefore procedurally barred from review by this federal habeas corpus court.  *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996)(habeas review precluded when petitioner neglected to allege actual prejudice and cause for failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).

12

ii.    *Fundamental Miscarriage of Justice*

Petitioner may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claims are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); accord *Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.

To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tex.1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Petitioner does not present any claim of actual innocence and the record contains nothing to suggest or establish his actual innocence of the underlying conviction. He presents no evidence or argument of the kind of actual innocence that would excuse his procedural default. He, therefore, has failed to overcome the

procedural bar to his claims.  Accordingly, federal claims four, five, six, seven, and eight are procedurally barred and should be dismissed with prejudice.

## IV.    MERITS

### A. Standard of Review - 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)).

"The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from... [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### i. Claim 1 – Insufficient Evidence

Petitioner argues that the evidence at trial was insufficient to establish that he was not acting in self-defense, or the defense of others, when he "attempted to subdue" the victim with his service weapon. Rec. Doc. 1-2, p. 13. The Third Circuit, in affirming petitioner's conviction and sentence, found that viewing the evidence in a light most favorable to the prosecution, the jury could have reasonably found that Defendant was the initial aggressor and rejected his assertion of self-defense. *State of Louisiana v. Flugence,* 12-466, (La. App. 3 Cir.), 129 So.3d 69.

*Jackson v. Virginia*, 443 U.S. 307 (1979), provides the appropriate United States Supreme Court standard for consideration of a claim of insufficient evidence. Under *Jackson*, a federal habeas court addressing an insufficiency of the evidence

claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Id*. at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008). Thus, to determine whether the commission of a crime is adequately supported by the record, the Court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (*citing Jackson*, 443 U. S. at 324 n. 16).

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (*quoting Jackson*, 443 U.S. at 324). Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson,* 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). All credibility

choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. *Perez*, 529 F.3d at 594. Therefore, this Court must examine whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

In arguing that the record is void of any evidence establishing that he was not acting in self-defense, Petitioner contends that all of the witnesses presented by the State failed to state that he shot down onto the deceased. Rec. Doc. 1-2, p. 14. The Third Circuit, discussing the sufficiency of the evidence claim in its unpublished opinion, stated:

> Our review of the evidence (which included a video of the fight between Benoit and Defendant) shows that Defendant was working as a security guard at Club Jamaica. While the crowd was watching

the parades, two men began fighting. When Benoit and Defendant attempted to break up the fight, Benoit bumped into Defendant, and Defendant then pushed Benoit. Benoit punched Defendant, knocking him to the ground. After he fell to the ground, Defendant got up, turned his hat backwards, and told Benoit to "come on." Defendant charged Benoit only to be punched and knocked down again. After the second confrontation, Benoit did not see Defendant again for a short time. Another security guard approached Benoit and attempted to calm him down.

During that time, Defendant left the scene and obtained a 9mm handgun. As he returned to confront Benoit, he carried the gun · 'gangster style," and uttered uh-huh." He approached Benoit put the gun to Benoit's chest, and shot him. Benoit, who had put his hands up with his palms outward, staggered, and fell backwards. After the gunshot, Defendant taunted Benoit saying, "now what are you going to do M · F · ?" Defendant was apprehended immediately after the shooting by Damon Prudhomme, who was working a detail for the Lafayette Parish Sheriff's Office. Officer Michael Rose, who arrived shortly thereafter, testified that Defendant told him he had been cut with a knife. However, Rose stated that he did not recall a knife being found in the vicinity of the altercation.

…

The evidence showed that Defendant was the first one to push Benoit after Benoit bumped into him during the struggle to break up the fight. The evidence also showed that Defendant left the scene for a short period, one to five minutes, after he was knocked down by Benoit the second time and returned with a gun. Thus, he could have easily escaped any aggression by Benoit. Nevertheless, Defendant left the scene, returned with a gun, shot Benoit in the chest, and yelled an obscenity at him. Because it is the role of the jury to weigh the credibility of the witnesses, the appellate court should not second-guess these determinations beyond a sufficiency of the evidence review. *State v. Buchanan*, 94-488 (La. App·. 3 Cir. 11/2/94); 649 So.2d 586, *writ denied*, 94-2956 (La. 3/24/95); 651 So.2d 287. Thus, viewing the evidence in a light most favorable to

the prosecution, it appears the jury could have reasonably found that Defendant was the initial aggressor and rejected his assertion of self-defense. We shall not disturb this finding.

Doc. 11-3, pp. 46-48.

Addressing Flugence's contention that he was acting in defense of other people, the Third Circuit found that "no evidence in the record that Benoit was going to attack anyone there other than Defendant. Additionally, there was no evidence that Benoit was armed. It was reasonable for the jury to believe that Benoit was not a danger to anyone but the Defendant. Because we cannot say that this finding is clearly erroneous, we yield to the jury's discretion and affirm its verdict." *Id*. at pp. 48-49.

Finally, Flugence also argues that if the killing was revenge for getting beat up by the victim, then this was, at best, a killing committed in the heat of passion, therein mandating a reduced verdict of manslaughter. Doc. 1-2, p. 14. The Third Circuit also addressed this claim, holding that the "jurors reasonably could have concluded that there was not sufficient provocation, and that enough time had passed for Defendant's blood to cool. Thus, viewing the evidence in the light most favorable to the prosecution, the jury reasonably rejected a manslaughter verdict and returned a verdict of second degree murder." *Id*. at p. 51.

Accordingly, this Court agrees that a rational trier of fact, after viewing this evidence in the light most favorable to the prosecution, could easily have found that

19

petitioner had specific intent to commit second-degree murder.  The jury was well within its authority to make credibility determinations as to the testimony of the witnesses.    It is not for this Court, on federal habeas review, to reevaluate the credibility of witness statements or the weight of the evidence or to substitute its own judgment for the trier of fact, whose fact-finding must be given deference. Considering the evidence in the light most favorable to the prosecution, it was rational and reasonable for the jury to have found that the essential elements of second degree murder were proven beyond a reasonable doubt.  As the Court finds that the state courts' denial of relief was not contrary to, or an unreasonable application of, United States Supreme Court precedent, Petitioner is not entitled to relief on this claim.

**ii.    Claim 2- Trial court committed error in denying the defense its constitutional right to present evidence and testimony.**

Petitioner contends that the trial court committed manifest error in refusing to allow the defense to present the testimony of a martial arts expert.  The Government, relying on the United States Supreme Court's holding in *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137 (1999), argues that because the trial court is the "gatekeeper" in regard to all expert testimony, it did not abuse its discretion in disallowing this testimony.

*Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993) provides the analytical framework for determining whether expert testimony is admissible.

20

*Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 243 (5th Cir. 2002). Under *Daubert*, trial courts act as gatekeepers overseeing the admission of scientific and non-scientific expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Trial courts must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. In other words, the trial judge must determine whether the expert testimony is both reliable and relevant. *Id*. at 589.

This issue was addressed in the trial court:

| | |
|---|---|
| Court: | Now you have an objection, Mr. Stutes? |
| State: | Yes, Your Honor. I anticipate—again, this is one of these in-advance objections. I anticipate that the testimony from this witness will involve an opinion that the victim may have had martial arts experience. I object to that and this is the basis. If that is the reason for the testimony or the purpose of the testimony, I would object to it, based on the same Article 404 that I objected to earlier. It would portray the character of the victim, and that is inadmissible evidence unless a foundation is laid that, first, an overt act is proven, and that's by way of the evidence that's been presented so far. And secondly and more importantly, that the defendant knew that this victim had, quote, 'martial arts experience.' |
| Defense: | Your Honor, my response to that is that this is an element that applies and goes exclusively to the |

issue of a responsive verdict in this matter, and that is the degree of force that we deal with when we talk about provocation. And that is one of the foundation arguments that the redactors talked about when they talked about manslaughter. They talked about adultery being such a thing that caused heat of blood, and they also talked about the severity of a blow to the head. And obviously a person who's had some martial arts experience and training is going to render a more severe blow to the head than someone who does not, and especially when they're using the long bones in the arm in the manner that they're used. And that's the basis of our opinion, but certainly it has nothing to do with the character of the accused—

State:    Your Honor, my response is that is proven by the fact, it can be argued by the video, and it is now proven by Dr. Harper's testimony. This is repetitive. In addition to it being objectionable under 404A, it is further repetitive and unnecessary.

Court:    I agree, and I'm going to sustain the objection, and I will note your objection to the ruling of the Court.

Trial Transcript, Doc. 11-9, pp. 67-68.

Based on the record, there was a factual basis to support the trial court's decision not to allow the martial arts expert testimony. The Louisiana Third Circuit reviewed this decision and found that there was no abuse of discretion. Petitioner has failed to demonstrate a violation of his constitutional rights or denial of due

22

process cognizable before this federal habeas court. He therefore is not entitled to relief on this claim.

    iii.    ***Claim 3 – Trial court committed error in refusing to allow the jury, during deliberations, and upon its request, to review slow motion videotape of the incident giving rise to the proceedings.***

Finally, Petitioner argues that the trial court committed manifest error in denying the defense its constitutional right to present evidence and testimony in its defense, specifically, a slow motion videotape of the incident giving rise to the proceedings.  The Government argues, and this Court agrees, that because he failed to make a contemporaneous objection when the trial court ruled that the jury could not view the videotape, he is procedurally barred from raising this claim herein.  *See Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Curington v. Cain*, 2015 U.S. Dist. LEXIS 84063 (E.D. La.   Feb. 27, 2015).

## V.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons,

**IT IS RECOMMENDED THAT** the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days

after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE in Chambers on this 8th day of April, 2020.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**